UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TASHA WILLIAMSON, an individual,<br><br>                        Plaintiff,<br><br>v.<br><br>NATIONAL CITY, a municipal corporation, LUCKY NGUYEN, an individual, JOHN McGOUCH, an individual, and DOES 1-3, inclusive,<br><br>                        Defendants. | Case No.:  3:18-cv-02394-WQH-JLB<br><br>**ORDER** |

HAYES, Judge:

The matters pending before the Court are the Motion for Summary Judgment or Partial Summary Judgment filed by Defendants National City, Lucky Nguyen and John McGough (ECF No. 50) and the Motion to Consolidate Cases filed by Plaintiff Tasha Williamson (ECF No. 51).

## I.    PROCEDURAL BACKGROUND

On October 18, 2018, Plaintiff Tasha Williamson initiated this action by filing a Complaint against Defendant National City and DOE Defendants.  (ECF No. 1).  On May 8, 2019, Plaintiff filed a First Amended Complaint ("FAC") against Defendants National

City, Lucky Nguyen, and John McGouch.  (ECF No. 24).  Plaintiff alleges that she participated in a demonstration in National City Council chambers on July 24, 2018.  *See id*. at 3.  Plaintiff alleges that "[w]hen it came time to remove" Plaintiff, "[h]er hands were [ ] handcuffed behind her back as she sat on the floor" but "the handcuffs were place[d] on extremely tight by [National City] officers."  *Id*. at 4.  Plaintiff alleges that Defendants Nguyen and McGouch removed Plaintiff from National City Council chambers by "dragging her backwards across the floor . . . ."  *Id*.  Plaintiff alleges "severe damage to her left shoulder, labrum, and rotator cuff" as a result of the "extremely tight" handcuffs and "dragg[ing] by the wrists and handcuff chain."  *Id*. at 5.  Plaintiff brings the following three causes of action: (1) excessive force in violation of 42 U.S.C. § 1983 against Defendants Nguyen and McGouch; (2) violence because of race in violation of Cal. Civ. Code § 51.7 against Defendants National City, Nguyen, and McGouch; and (3) excessive force in violation of Cal. Civ. Code § 52.1 against Defendants National City, Nguyen, and McGouch.  *See id.* at 6-11.  Plaintiff seeks general, special, and punitive damages; attorney fees and costs; and "[a]ny further equitable or legal relief that this Court deems just and appropriate."  *Id*. at 11-12.

On June 3, 2019, Defendants National City, Nguyen, and McGouch filed an Answer. (ECF No. 28).

On April 24, 2020, Defendants National City, Nguyen, and McGouch filed a Motion for Summary Judgment or Partial Summary Judgment.  (ECF No. 50).  On the same day, Plaintiff filed a Motion to Consolidate Cases.  (ECF No. 51).  On June 15, 2020, Defendants National City, Nguyen, and McGouch filed a Response in opposition to Plaintiff's Motion to Consolidate Cases (ECF No. 51).  (ECF No. 56).  On the same day, Plaintiff filed a Response in opposition to Defendants' Motion for Summary Judgment or Partial Summary Judgment (ECF No. 50).  (ECF No. 58).  On June 22, 2020, Plaintiff filed a Reply to the Motion to Consolidate Cases (ECF No. 51).  (ECF No. 60).  On the same day, Defendants National City, Nguyen, and McGouch filed a Reply to the Motion for Summary Judgment or Partial Summary Judgment (ECF No. 50).  (ECF No. 61).

## II.  FACTS

Prior to the July 24, 2018 National City Council meeting, Plaintiff "and five colleagues . . . met to discuss their protest and planned disruption of the meeting after the public comment portion of the meeting." (Pl.'s Resp. to Defs.' Separate Statement of Undisputed Material Facts ("SSUMF") ¶ 1, ECF No. 58-1 at 2). Plaintiff and her colleagues "filled out jail intake forms, acquired bail money, and arranged for people to man the phones so they could call for bail after being arrested." *Id*. ¶ 3, ECF No. 58-1 at 2. Plaintiff and her colleagues "further discussed not cooperating with law enforcement and being 'dead weight' so law enforcement would have to carry them out of [National City] Council chambers." *Id*. ¶ 4, ECF No. 58-1 at 2.

After the public comment portion of the meeting, Plaintiff "stood up in the public seating section of the room and said 'I am Earl McNeil.'" *Id*. ¶ 6, ECF No. 58-1 at 3. Plaintiff "was wearing a bulletproof vest and a sweatshirt." *Id*. ¶ 7, ECF No. 58-1 at 3. Plaintiff "and five other people immediately left their seats, passed the public speaking podium[,] and approached the dias where the [National City] Council members were sitting." *Id*. ¶ 8, ECF No. 58-1 at 3. Plaintiff and her colleagues "were chanting and shouting 'you have blood on your hands' (and/or 'I am Earl McNeil'), and proceeded to lie face up on the floor with their arms and red painted hands extended while continuing to shout 'you have blood on your hands.'" *Id*. ¶ 9, ECF No. 58-1 at 3.

"The Mayor called for order." *Id*. ¶ 10, ECF No. 58-1 at 3. "The protesters did not stop." *Id*. ¶ 11, ECF No. 58-1 at 4. "The [National City] Council meeting was adjourned to allow for order to be restored." *Id*. ¶ 12, ECF No. 58-1 at 4. "Law enforcement repeatedly told the protestors, and [Plaintiff] specifically, to leave the room or they would be arrested." *Id*. ¶ 13, ECF No. 58-1 at 4. "When warning did not work, law enforcement began making arrests." *Id*. ¶ 14, ECF No. 58-1 at 4.

A photo submitted in support of Plaintiff's Response in opposition to Defendants' Motion for Summary Judgment or Partial Summary Judgment (ECF No. 58) depicts two unidentified police officers holding and lifting an unidentified, handcuffed, female, white

protestor by the upper arms and/or armpits. *See* Ex. 2 to Gilliland Decl., ECF No. 58-2 at 30. A second photo depicts two unidentified police officers hold and lifting an unidentified, handcuffed, female, white protestor by the upper arms and/or armpits. *See* Ex. 3 to Gilliland Decl., ECF No. 58-2 at 32. A third photo depicts two unidentified police officers hold and lifting an unidentified, handcuffed, female, white protestor by her bent elbows. *See* Ex. 11 to Gilliland Decl., ECF No. 58-2 at 72.

"Employing the planned uncooperative and 'dead weight' tactics, [Plaintiff], who was lying on her back with her eyes closed and still chanting, would not move . . . ." *Id*. ¶ 15, ECF No. 58-1 at 4. Defendants "McGouch and Nguyen used their hands to put [Plaintiff] in a seat[ed] position allowing [Defendant] McGouch to place [Plaintiff]'s arms behind her back and handcuff her." *Id*. Plaintiff "did not complain about the handcuffs being too tight." *Id*. ¶ 17, ECF No. 58-1 at 5. The video footage from a wall-mounted camera inside National City Council chambers depicts Plaintiff and Defendants Nguyen and McGouch on the other side of the podium. *See* Ex. F to Dong Decl. ECF No. 50-6. After Plaintiff's arms were handcuffed behind her back, Defendants Nguyen and McGouch momentarily lifted Plaintiff a few feet off the floor to a semi-seated, semi-standing position. *See id*. Soon after, Defendant Nguyen and/or Defendant McGouch lost their grip and Plaintiff turned mid-air to face the floor before slowly falling to the floor face-down. *See id*. Plaintiff momentarily remained on her stomach until Defendant Nguyen and/or Defendant McGouch rolled Plaintiff onto her back. *See id*.; Pl.'s Resp. to Defs.' SSUMF ¶ 20, ECF No. 58-1 at 5. Again, Defendants Nguyen and McGouch put Plaintiff in a seated position and then lifted Plaintiff a few feet off the floor to a semi-seated, semi-standing position. *See* Ex. F to Dong Decl. ECF No. 50-6. Defendants Nguyen and McGouch dragged Plaintiff backwards by the arms from the podium to the exit door. *See id*. The video footage captured by Aaron Leaf depicts Defendant McGouch holding and dragging Plaintiff by the upper right arm and/or right armpit. *See* Ex. E to Paradis Decl. ECF No. 50-5. The video footage captured by UPAT depicts Defendant Nguyen holding and dragging Plaintiff by the left wrist and left forearm upon reaching the exit door. *See* Ex. D

4

to Paradis Decl. ECF No. 50-5.  Plaintiff screamed from the podium to the exit door.  *See id.*; Ex. E to Paradis Decl. ECF No. 50-5; Ex. F to Dong Decl. ECF No. 50-6; Pl.'s Resp. to Defs.' SSUMF ¶ 26, ECF No. 58-1 at 7.

The video footage from Defendant Nguyen's and Defendant McGouch's body cameras depict Plaintiff on the other side of the exit door.  *See* Ex. A to Nguyen Decl. ECF No. 50-3; Ex. B to McGouch Decl. ECF No. 50-4.  When Defendants' body camera video footage begins, Plaintiff is face-down on the floor of a hallway with her arms handcuffed behind her back.  *See* Ex. A to Nguyen Decl. ECF No. 50-3; Ex. B to McGouch Decl. ECF No. 50-4.  Plaintiff stated that she was unable to stand up because Defendants had hurt her shoulders and requested an ambulance.  *See* Ex. A to Nguyen Decl. ECF No. 50-3; Ex. B to McGouch Decl. ECF No. 50-4.  Defendant Nguyen put Plaintiff in a seated position and explained that he and Defendant McGouch were going to "double cuff" Plaintiff's handcuffs for increased comfort.  *See* Ex. A to Nguyen Decl. ECF No. 50-3; Ex. B to McGouch Decl. ECF No. 50-4.  As Defendants Nguyen and McGouch added a second pair of handcuffs to lengthen the distance between Plaintiff's hands behind her back, Plaintiff complained that it was "too late", that Defendants Nguyen and McGouch had already pulled her arms and hands, and that Defendants Nguyen and McGouch were "still pulling" her arms and hands while double cuffing.  *See* Ex. A to Nguyen Decl. ECF No. 50-3; Ex. B to McGouch Decl. ECF No. 50-4.

The video footage from an unidentified police officer's body camera depicts Plaintiff back in National City Council chambers sitting on a chair near the podium.  *See* Ex. 8 to Gilliland Decl. ECF No. 58-2.  The public seating section of the room was empty and Plaintiff was surrounded by police officers and firefighters.  *See id.*  Firefighters conducted a medical evaluation of Plaintiff.  *See id.*  When asked by a firefighter what was bothering her, Plaintiff responded that her arms and wrist hurt.  *See id.*  When asked by a firefighter if she would like to be taken to the hospital by ambulance, Plaintiff declined.  *See id.*

"After the July 24, 2018 protest, [Plaintiff] was arrested by [Defendant] McGouch for violation of California Penal Code section 403, disrupting a public meeting."

(Williamson Decl. ¶ 5, ECF No. 58-3 at 2) (emphasis omitted).  "A criminal case was never filed against [Plaintiff] for that arrest."  *Id*.

"Neither [Defendants] Nguyen nor McGouch said anything about [Plaintiff]'s race or her politics before, during[,] or after her arrest."  (Pl.'s Resp. to Defs.' SSUMF ¶ 38, ECF No. 58-1 at 10).  "[N]either [Defendants] Nguyen nor McGouch treated anyone else differently because neither of them arrested, handcuffed[,] nor removed anyone else that day."  *Id*. ¶ 39, ECF No. 58-1 at 11.

"After being released, [Plaintiff] sought medical care."  *Id*. ¶ 36, ECF No. 58-1 at 10.  Plaintiff's July 25, 2018 medical records show that Plaintiff "complain[ed] of left hand pain and bilateral shoulder pain" and experienced "[m]odest swelling of the wrist and deltoid area on the left with no clinical signs of fracture . . . ."  (Ex. 9 to Gilliland Decl., ECF No. 58-2 at 45-46).[1]  Plaintiff's July 25, 2018 medical records further show an "[i]mpression" of a "sprain[ed] left wrist and shoulder."  *Id*. at 46.  On July 27, 2018, Plaintiff complained of "back, neck, [and] shoulder pain" and was found to have a sprained left wrist, wrist pain, and shoulder pain on the left side.  *Id*. at 48.  Plaintiff's July 30, 2018 medical records state that "[f]ocusing on the wrist reveals mild swelling to the dorsum of the right hand with some associated tenderness and slight tenderness to the mid dorsal aspect of the left wrist."  *Id*. at 50.  On July 30, 2018, Plaintiff was diagnosed with "[b]ilateral wrist sprain", "placed in a wrist splint", and referred to physical therapy.  *Id*. at 51.

---

[1] Defendants National City, Nguyen, and McGouch object to Exhibits 9 and 10 of Gilliland's declaration (ECF No. 58-2 at 43-70) filed in support of Plaintiff's Response in opposition (ECF No. 58) on the grounds they are hearsay and lack foundation.  *See* ECF No. 61-1 at 2.  The Court overrules Defendants' objections to Exhibit 9 (ECF No. 58-2 at 43-53) because the contents of the Exhibit may be admissible as statements made for medical diagnosis or treatment, provided that Plaintiff lays the proper foundation at trial.  *See* Fed. R. Evid. 803(4) (a statement made for medical diagnosis or treatment "(A) is made for--and is reasonably pertinent to--medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause.").  Defendants' objections to Exhibit 10 (ECF No. 58-2 at 54-70) are denied as moot because the Court has not considered this Exhibit in resolving this Order.

**III.   MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT (ECF No. 50)**

### A. Contentions of the Parties

Defendants Nguyen and McGouch contend that they are entitled to qualified immunity regarding Plaintiff's claim for excessive force in violation of 42 U.S.C. § 1983. Defendants National City, Nguyen, and McGouch contend that Plaintiff's claim for violation of Cal. Civ. Code § 52.1 fails because Plaintiff fails to establish an underlying Fourth Amendment violation and specific intent by Defendants Nguyen or McGouch to violate Plaintiff's Fourth Amendment rights.   Defendants National City, Nguyen, and McGouch contend that Plaintiff's claim for violation of Cal. Civ. Code § 51.7 fails because the amount of force used was reasonable and Plaintiff fails to establish racial or political bias by Defendants Nguyen or McGouch.

Plaintiff contends that Defendants Nguyen and McGouch are not entitled to qualified immunity.   Plaintiff contends that Defendants National City, Nguyen, and McGouch violated her Fourth Amendment rights through the use of excessive force.   Plaintiff contends that reasonableness of force should be determined by a jury and that there is no dispute of material fact that protesters of different races were treated differently by Defendants.

### B. Standard of Review

"The inquiry performed [at the summary judgment stage] is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  "A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought." Fed. R. Civ. P. 56(a).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id*.  A material fact is one that is relevant to an element of a claim or

defense and whose existence might affect the outcome of the suit.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The materiality of a fact is determined by the substantive law governing the claim or defense.  *See Anderson*, 477 U.S. at 248.

"On summary judgment, the moving party bears the [initial] burden of establishing the basis for its motion and identifying evidence that demonstrates the absence of a genuine issue of material fact." *Davis v. United States*, 854 F.3d 594, 598 (9th Cir. 2017) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . , the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case" and not by "*negating* the opponent's claim." *Celotex*, 477 U.S. at 323, 325.

The burden then shifts to the nonmovant to provide admissible evidence, beyond the pleadings, of specific facts showing a genuine issue for trial.  *See Anderson*, 477 U.S. at 256.  To survive summary judgment, the nonmovant cannot rest solely on "conclusory allegations of the complaint" or "conclusory allegations of an affidavit [or declaration]." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).  "A conclusory, self-serving affidavit [or declaration], lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), *as amended* (Apr. 11, 1997).  Instead, the nonmovant must designate which specific facts show that there is a genuine issue for trial.  *See Anderson*, 477 U.S. at 256.  "In short, what is required to defeat summary judgment is simply evidence 'such that a reasonable juror drawing all inferences in favor of the respondent could return a verdict in the respondent's favor.'" *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (quoting *Reza v. Pearce*, 806 F.3d 497, 505 (9th Cir. 2015)).

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).  The nonmoving party's affidavit or "declaration is to be

accepted as true" and the nonmoving party's "evidence should not be weighed against the evidence of" the moving party. *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1289 (9th Cir. 1987). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Anderson*, 477 U.S. at 255.

## C. Discussion

### i. Excessive Force in Violation of 42 U.S.C. § 1983 Against Defendants Nguyen and McGouch (claim 1)

Defendants Nguyen and McGouch contend that they are entitled to qualified immunity regarding Plaintiff's first claim for excessive force in violation of 42 U.S.C. § 1983. Defendants Nguyen and McGouch contend that the amount of force used to remove Plaintiff from National City Council chambers was minimal and reasonable. Defendants Nguyen and McGouch contend that there was a significant government interest in controlling protesters and quickly removing Plaintiff from National City Council chambers. Defendants Nguyen and McGouch contend that there was no clearly established law at the time of the incident that would have put them on notice that removing Plaintiff from the room in the manner that she was removed would violate the Fourth Amendment. Defendants Nguyen and McGouch contend that no constitutional violation occurred when Plaintiff was handcuffed because Plaintiff failed to complain about the tightness of the handcuffs and failed to sustain significant and lasting injury to her wrists.

Plaintiff contends that Defendants Nguyen and McGouch are not entitled to qualified immunity. Plaintiff contends that Defendants Nguyen and McGouch violated Plaintiff's Fourth Amended rights because the significant nature of the intrusion outweighs the government's minimal interest in the use of force. Plaintiff contends that the Fourth Amendment violation was clearly established because Defendants Nguyen and McGouch caused unnecessary pain during Plaintiff's arrest or detention and used excessive force while Plaintiff was passively resisting.

9

Section 1983 provides a remedy for constitutional tort violations committed by state and local government officials.  Section 1983 states, in relevant part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."  *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).  "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  To prevail on a § 1983 claim, "a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) depriv[ed][him] of federal rights, privileges or immunities [and] (4) caus[ed][him] damage . . . ."  *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164 (9th Cir. 2005) (alterations in original) (citation omitted).

"The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law."  *Pearson v. Callahan*, 555 U.S. 223, 244 (2009).  More specifically, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  *Pearson*, 555 U.S. at 231.  Because qualified immunity is "an *immunity from suit* rather than a mere defense to liability . . . , it is effectively lost if a case is erroneously permitted to go to trial."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

3:18-cv-02394-WQH-JLB

"An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in [his] shoes would have understood that he was violating it, . . . meaning that existing precedent . . . placed the statutory or constitutional question beyond debate." *City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (first and third alterations in original) (citation omitted). "This exacting standard gives government officials breathing room to make reasonable but mistaken judgments by protect[ing] all but the plainly incompetent or those who knowingly violate the law." *Id*. (alteration in original). "[T]he salient question . . . is whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged [conduct] was unconstitutional." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (alterations in original).

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow*, 457 U.S. at 818). "First, a court must decide whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right." *Pearson*, 555 U.S. at 232 (citations omitted). "[T]he constitutional violation prong concerns the reasonableness of the officer's *mistake of fact* . . . ." *Torres v. City of Madera*, 648 F.3d 1119, 1127 (9th Cir. 2011). While an officer's actions are not judged "with the 20/20 vision of hindsight," "[w]here an officer's particular use of force is based on a mistake of fact, we ask whether a reasonable officer would have or *should* have accurately perceived that fact." *Id*. at 1124. "[I]f the answer to [the first] inquiry is yes, we proceed to determine whether the constitutional right was clearly established in light of the specific context of the case at the time of the events in question." *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011).

"[T]he clearly established prong concerns the reasonableness of the officer's *mistake of law* . . . ." *Torres*, 648 F.3d at 1127. "For a right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that his or her actions

violated that right." *Tarabochia v. Adkins*, 766 F.3d 1115, 1125 (9th Cir. 2014). "The plaintiff bears the burden of proof that the right allegedly violated was clearly established[.]" *Id*. (alteration in original). "To meet this standard the very action in question need not have previously been held unlawful." *Id*. The question is "whether a reasonable officer would have had fair notice that [the action] was unlawful[.]" *Id*. (alterations in original).

The Fourth Amendment guarantees "[t]he right of the people . . . against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. "A claim that law-enforcement officers used excessive force to effect a seizure is governed by the Fourth Amendment's reasonableness standard." *Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014). In other words, to prove an excessive force claim under § 1983, the plaintiff "must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015). "A court (judge or jury) cannot apply this standard mechanically." *Id*. at 397. "Rather, objective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id*. (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id*. (citing *Graham*, 490 U.S. at 396). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. "[T]he question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 397.

"Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id*. at 396. In other words, courts "must balance the

amount of force applied against the need for that force." *Bryan v. MacPherson*, 630 F.3d 805, 823-24 (9th Cir. 2010).   The fact-and-circumstance-specific nature of the reasonableness test makes it "not capable of precise definition or mechanical application . . . ." *Graham*, 490 U.S. at 396.

Courts must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*.   "These factors, however, are not exclusive." *Bryan*, 630 F.3d at 826.   "Rather, [courts] examine the totality of the circumstances and consider whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*." *Id*.   "In some cases, for example, the availability of alternative methods of capturing or subduing a suspect may be a factor to consider." *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005).   Other factors that may bear on the reasonableness of the force used include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; [and] the threat reasonably perceived by the officer . . . ." *Kingsley*, 576 U.S. at 397.

The Court of Appeals has stated that courts must "first consider[ ] the nature and quality of the alleged intrusion; [ ] then consider the governmental interests at stake by looking at (1) how severe the crime at issue is, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Thomas v. Dillard*, 818 F.3d 864, 889 (9th Cir. 2016) (quoting *Mattos*, 661 F.3d at 441), *as amended* (May 5, 2016).   These factors are not exclusive and courts are "free to consider issues outside the three enumerated above when additional facts are necessary to account for the totality of circumstances in a given case." *Mattos*, 661 F.3d at 441.   "Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or

3:18-cv-02394-WQH-JLB

1  judgment as a matter of law in excessive force cases should be granted sparingly." *Smith*,
2  394 F.3d at 701 (alteration in original).

### 1.  Tight Handcuffs

4       "It is well-established that overly tight handcuffing can constitute excessive force."
5  *Wall v. Cty. of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004).   "The issue of tight
6  handcuffing is usually fact-specific and is likely to turn on the credibility of the witnesses."
7  *LaLonde v. Cty. of Riverside*, 204 F.3d 947, 960 (9th Cir. 2000).

8       In several cases, the Court of Appeals has found no qualified immunity on excessive
9  force claims regarding tight handcuffing and/or contentions that tight handcuffing
10 presented a triable issue of fact as to an excessive force claim.  However, in each of those
11 cases, the plaintiff repeatedly complained that the handcuffs were too tight and/or
12 repeatedly asked officers to loosen them.  *See e.g.*, *Meredith v. Erath*, 342 F.3d 1057, 1060,
13 1063-64 (9th Cir. 2003) (no qualified immunity on excessive force claim when defendant
14 IRS agent tightly handcuffed plaintiff and refused to loosen handcuffs for 30 minutes
15 despite several complaints from plaintiff); *LaLonde*, 204 F.3d at 960, 962 (triable issue of
16 fact as to excessive force claim and no qualified immunity when defendant officers tightly
17 handcuffed plaintiff, refused to loosen the handcuffs when plaintiff complained, and
18 permitted pepper spray to remain on plaintiff's face); *Palmer v. Sanderson*, 9 F.3d 1433,
19 1436 (9th Cir. 1993) (no qualified immunity on excessive force claim when "Sanderson [
20 ] presented no evidence that would justify handcuffing Palmer so tightly that he suffered
21 pain and bruises, or to justify his refusal to loosen the handcuffs after Palmer complained
22 of the pain"); *Alexander v. Cty. of Los Angeles*, 64 F.3d 1315, 1322-23 (9th Cir. 1995)
23 (triable issue of fact as to excessive force claim and no qualified immunity when defendant
24 officers disregarded plaintiff's repeated requests to loosen or remove handcuffs for 35 to
25 40 minutes); *Wall*, 364 F.3d at 1109-10, 1112 (triable issue of fact as to excessive force
26 claim and no qualified immunity when defendant officer tightly handcuffed plaintiff, threw
27 him into patrol car, left him there for 20 minutes in 80 to 90 degree heat, and disregarded
28 two requests from plaintiff to loosen the handcuffs).

3:18-cv-02394-WQH-JLB

District courts have also denied qualified immunity in cases where the plaintiff repeatedly complained that the handcuffs were too tight and/or repeatedly asked officers to loosen them. *See e.g.*, *Gregory v. Adams*, No. CIV S-05-1393 FCD EFB P, 2008 WL 486013, at \*5-6 (E.D. Cal. Feb. 19, 2008) (triable issue of fact as to excessive force claim when plaintiff "was wearing a wrist brace at the time the handcuffs were placed on him [and] repeatedly called out to have the [hand]cuffs loosened because he was in acute pain, and that those appeals were ignored for a protracted period of time"), *report and recommendation adopted*, No. CIV S-05-1393 FCD EFB P, 2008 WL 780672 (E.D. Cal. Mar. 21, 2008); *Lawrence v. City & Cty. of San Francisco*, 258 F. Supp. 3d 977, 990-92 (N.D. Cal. 2017) (triable issue of fact as to excessive force claim and no qualified immunity when "there [wa]s no evidence that [defendant officer] checked the tightness of the handcuffs or placed another set of handcuffs on [p]laintiff in response to his complaints after [p]laintiff told her that the handcuffs caused him pain"); *Arias v. Amador*, 61 F. Supp. 3d 960, 977 (E.D. Cal. 2014) (triable issue of fact as to excessive force claim when defendant officer "ignored [plaintiff]'s request (and a paramedic's suggestion) to loosen [plaintiff]'s handcuffs", "failed to secure [the handcuffs] to prevent them from tightening during the drive to jail", and "drove in such a way as to cause the handcuffs to actually become tighter").

A single complaint regarding tight handcuffs or a single request to loosen or remove tight handcuffs is generally insufficient to show that the tight handcuffing constituted excessive force. *See e.g.*, *Smith v. Yarborough*, No. CV 04-4502-DSF (JTL), 2008 WL 4877464, at \*12-14 (C.D. Cal. Nov. 7, 2008) (defendant sergeant was entitled to summary judgment on excessive force claim because "there [wa]s no evidence that plaintiff complained about the handcuffs to [defendant sergeant] on more than one occasion" and "[n]or was this a situation where plaintiff had a preexisting condition or injury, known to [defendant sergeant], making tight handcuffing particularly painful or harmful"), *aff'd*, 578 F. App'x 721 (9th Cir. 2014); *Antonellis v. California*, No. SACV 15-00024 JVS (JCGx), 2017 WL 6021425, at \*5 (C.D. Cal. Jan. 31, 2017) (defendant officer was entitled to

summary judgment on excessive force claim because plaintiff's "single complaint to [ ] [defendant] officers [about excessive tightness] and allegation of bruising [could not] support her excessive force claim"), *aff'd*, 728 F. App'x 739 (9th Cir. 2018); *Shaw v. City of Redondo Beach*, No. CV 05-0481 SVW (FMOx), 2005 WL 6117549, at *9, 11  (C.D. Cal. Aug. 23, 2005) (defendant officer was entitled to summary judgment on excessive force claim because plaintiff "did not repeatedly request to have the handcuffs removed or loosened, was not in any demonstrable pain, did not complain of pain or inform [defendant officer] of any pre-existing injuries, and was not pushed or shoved"); *Han v. City of Los Angeles*, No. CV 14-08582 DDP (AJWx), 2016 WL 2758241, at *8, 10 (C.D. Cal. May 12, 2016) (dismissing claim against defendant guards and officers regarding excessive force claim on summary judgment because "the only facts for excessive force . . . [we]re that [p]laintiff informed [defendant] officers of a preexisting shoulder injury that was causing him pain based on the handcuffs being tight behind his back and that [defendant] officers did not do anything to alleviate that pain").

In this case, the evidence in the records shows that Plaintiff "did not complain about the handcuffs being too tight."  (Pl.'s Resp. to Defs.' SSUMF ¶ 17, ECF No. 58-1 at 5). The evidence in the records shows that Defendants Nguyen and McGouch placed a second pair of handcuffs on Plaintiff to lengthen the distance between Plaintiff's hands behind her back.  *See* Ex. A to Nguyen Decl. ECF No. 50-3; Ex. B to McGouch Decl. ECF No. 50-4. Plaintiff has failed to come forward with evidence to show that Defendants Nguyen and McGouch were aware of Plaintiff's tight handcuffs.  Plaintiff has failed to present evidence to support a genuine issue of material fact as to the excessive force claim regarding tight handcuffs.  The Court need not consider the second qualified immunity prong because the Court finds that there is no genuine issue of material fact as to whether the handcuffing constituted a constitutional violation.  The Court grants summary judgment in favor of Defendants Nguyen and McGouch and against Plaintiff for excessive force in violation of 42 U.S.C. § 1983 (claim 1) regarding tight handcuffs.

### 2. Pulling Plaintiff's Arms and Hands

In this case, the evidence in the records shows that Defendants Nguyen and McGouch put Plaintiff in a seated position and then lifted Plaintiff a few feet off the floor to a semi-seated, semi-standing position while Plaintiff's hands were handcuffed behind her back. *See* Ex. F to Dong Decl. ECF No. 50-6.  Reviewed in the light most favorable to Plaintiff, the evidence in the records shows that Defendants Nguyen and McGouch dragged Plaintiff backwards by the arms from the podium to the exit door while she was handcuffed. *See id*.  The video footage captured by Aaron Leaf depicts Defendant McGouch holding and dragging Plaintiff by the upper right arm and/or right armpit. *See* Ex. E to Paradis Decl. ECF No. 50-5.  The video footage captured by UPAT depicts Defendant Nguyen holding and dragging Plaintiff by the left wrist and left forearm upon reaching the exit door. *See* Ex. D to Paradis Decl. ECF No. 50-5.  The evidence in the records shows that Plaintiff screamed while she was dragged from the podium to the exit door. *See id*.; Ex. E to Paradis Decl. ECF No. 50-5; Ex. F to Dong Decl. ECF No. 50-6; Pl.'s Resp. to Defs.' SSUMF ¶ 26, ECF No. 58-1 at 7.

The evidence in the record shows that, later the same day, when asked by a firefighter what was bothering her, Plaintiff responded that her arms and wrist hurt. *See* Ex. 8 to Gilliland Decl. ECF No. 58-2.  When asked by a firefighter if she would like to be taken to the hospital by ambulance, Plaintiff declined. *See id*.  Plaintiff's July 25, 2018 medical records show that Plaintiff "complain[ed] of left hand pain and bilateral shoulder pain" and experienced "[m]odest swelling of the wrist and deltoid area on the left with no clinical signs of fracture . . . ."  (Ex. 9 to Gilliland Decl., ECF No. 58-2 at 45-46).  Plaintiff's July 25, 2018 medical records further show an "[i]mpression" of a "sprain[ed] left wrist and shoulder." *Id*. at 46.  On July 27, 2018, Plaintiff complained of "back, neck, [and] shoulder pain" and was found to have a sprained left wrist and shoulder pain on the left side. *Id*. at 48.  Plaintiff's July 30, 2018 medical records state that "[f]ocusing on the wrist reveals mild swelling to the dorsum of the right hand with some associated tenderness and slight tenderness to the mid dorsal aspect of the left wrist." *Id*. at 50.  On July 30, 2018, Plaintiff

17

was diagnosed with "[b]ilateral wrist sprain", "placed in a wrist splint", and referred to physical therapy. *Id.* at 51.

Courts must "first consider[ ] the nature and quality of the alleged intrusion; [ ] then consider the governmental interests at stake by looking at (1) how severe the crime at issue is, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Thomas*, 818 F.3d at 889 (quoting *Mattos*, 661 F.3d at 441).

The evidence in the record demonstrates a substantial intrusion. Plaintiff screamed while she was dragged from the podium to the exit door. *See* Ex. D to Paradis Decl. ECF No. 50-5; Ex. E to Paradis Decl. ECF No. 50-5; Ex. F to Dong Decl. ECF No. 50-6; Pl.'s Resp. to Defs.' SSUMF ¶ 26, ECF No. 58-1 at 7. On July 25, 2018, Plaintiff complained of pain in her left hand and bilateral shoulder pain. *See* Ex. 9 to Gilliland Decl., ECF No. 58-2 at 45-46. On July 27, 2018, Plaintiff complained of back, neck, and shoulder pain and was found to have a sprained left wrist and shoulder pain on the left side. *See id.* at 48. On July 30, 2018, Plaintiff was diagnosed with mild swelling of the right hand and tenderness of the left wrist. *See id.* at 50. On July 30, 2018, Plaintiff was diagnosed with bilateral wrist sprain, placed in a wrist splint, and referred to physical therapy. *See id.* at 51.

The evidence in the record demonstrates that "the governmental interests at stake" were comparatively low. *Thomas*, 818 F.3d at 889 (quoting *Mattos*, 661 F.3d at 441). The "crime at issue" was "violation of California Penal Code section 403," "disturbance of a public assembly or meeting," which is "a misdemeanor." *Id.* (quoting *Mattos*, 661 F.3d at 441); Williamson Decl. ¶ 5, ECF No. 58-3 at 2; Cal. Penal Code § 403. Plaintiff did not "pose[] an immediate threat to the safety of the officers or others" and was not "actively resisting arrest or attempting to evade arrest by flight" because Plaintiff "[e]mploy[ed] . . . uncooperative and 'dead weight' tactics [by] lying on her back with her eyes closed[,] . . . chanting, [and] [ ] not mov[ing] . . . ." *Thomas*, 818 F.3d at 889 (quoting *Mattos*, 661 F.3d at 441); Pl.'s Resp. to Defs.' SSUMF ¶ 15, ECF No. 58-1 at 4.

The Court finds that Plaintiff presents a genuine issue of material fact as to the excessive force claim regarding Defendant Nguyen's and Defendant McGouch's pulling of Plaintiff's arms and hands such that a reasonable jury could find excessive force in violation of 42 U.S.C. § 1983. *See e.g., Lopez v. Chula Vista Police Dep't*, No. 07cv1272 WQH (BLM), 2009 WL 10725739, at *7 (S.D. Cal. June 22, 2009) ("In spite of [p]laintiff's non-resistance and immediate offering of his ICE credentials, . . . [d]efendant [o]fficers 'spun [[p]laintiff] around,' 'yank[ed] [his] arms in . . . opposite directions,' lifted him off his feet by 'jamm[ing]' his arm 'all the way up,' and then 'took [him] down to the ground.' . . . with such force that it caused [p]laintiff extreme back pain which ultimately required surgery. . . . [O]ne [defendant] [o]fficer put a taser to [p]laintiff's ribs and threatened to tase him, and at least one [defendant] [o]fficer pointed a gun at [p]laintiff's head. . . . [A] reasonable jury could find that [ ] [d]efendant [o]fficers used excessive force in violation of the Fourth Amendment when they initially detained and handcuffed [p]laintiff.").

An officer will not be entitled to qualified immunity if the law is "clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1078-79 (9th Cir. 2011). It was clearly established at the time of the incident that Defendant Nguyen's and Defendant McGouch's use of force must be reasonable under the circumstances. Taking the evidence in the light most favorable to Plaintiff, the Court finds that Defendants Nguyen and McGouch are not entitled to qualified immunity regarding the pulling of Plaintiff's arms and hands. The Court denies summary judgment as to excessive force in violation of 42 U.S.C. § 1983 (claim 1) regarding Defendant Nguyen's and Defendant McGouch's pulling of Plaintiff's arms and hands.

### ii. Excessive Force in Violation of Cal. Civ. Code § 52.1 Against Defendants National City, Nguyen, and McGouch (claim 3)

Defendants National City, Nguyen, and McGouch contend that Plaintiff's third claim pursuant to Cal. Civ. Code § 52.1 fails because Plaintiff fails to establish a requisite underlying Fourth Amendment violation and Plaintiff fails to establish specific intent by

1   Defendants Nguyen or McGouch to violate Plaintiff's Fourth Amendment rights.   Plaintiff

2   contends that Defendants National City, Nguyen, and McGouch violated her Fourth

3   Amendment rights through the use of excessive force.

4         California Civil Code § 52.1 states, in relevant part,

5         Any individual whose exercise or enjoyment of rights secured by the
          Constitution or laws of the United States, or of rights secured by the
6         Constitution or laws of this state, has been interfered with, or attempted to be
7         interfered with, . . . may institute and prosecute in his or her own name and
          on his or her own behalf a civil action for damages . . . .
8

9   Cal. Civ. Code § 52.1(c).   The elements of a § 52.1 excessive force claim are essentially

10  identical to those of a § 1983 excessive force claim.   *See City of Simi Valley v. Superior*

11  *Court*, 111 Cal. App. 4th 1077, 1085 (2003) (where federal constitutional claims are barred

12  and there is no conduct constituting a state constitutional violation, there is no basis for

13  liability under § 52.1).

14        For the reasons stated above in the Court's analysis of Plaintiff's § 1983 claim,

15  Plaintiff has failed to present a genuine issue of material fact as to excessive force regarding

16  tight handcuffs.   Therefore, Plaintiff's claim against Defendants National City, Nguyen,

17  and McGouch for excessive force in violation of § 52.1 regarding tight handcuffs also fails.

18  *See e.g.*, *Lawrence*, 258 F. Supp. 3d at 998 ("[T]here is no evidence that [defendant officer]

19  violated [p]laintiff's constitutional rights.   Accordingly, there is no basis to state a [§ 52.1]

20  claim against [defendant officer].").   The court grants summary judgment in favor of

21  Defendants National City, Nguyen, and McGouch and against Plaintiff for excessive force

22  in violation of Cal. Civ. Code § 52.1 (claim 3) regarding tight handcuffs.

23        For the reasons stated above in the Court's analysis of Plaintiff's § 1983 claim,

24  Plaintiff has presented a genuine issue of material fact as to excessive force regarding

25  Defendant Nguyen's and Defendant McGouch's pulling of Plaintiff's arms and hands.

26  Therefore, Plaintiff has presented a genuine issue of material fact as to whether Defendants

27  Nguyen and McGouch are liable pursuant to § 52.1.   *See e.g.*,   *Lopez*, 2009 WL 10725739,

28  at *13 ("For the reasons stated above in the Court's analysis of [p]laintiff's § 1983 claims

against the [d]efendant [o]fficers and [s]ergeants, [p]laintiff has raised a triable issue of fact as to whether the [d]efendant [o]fficers and [s]ergeants are liable pursuant to . . . § 52.1.").  The Court denies summary judgment as to excessive force in violation of Cal. Civ. Code § 52.1 (claim 3) regarding Defendant Nguyen's and Defendant McGouch's pulling of Plaintiff's arms and hands.

California Government Code § 815.2 states that

(a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

(b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability.

Cal. Gov't Code § 815.2.  "California . . . has rejected the *Monell* rule and imposes liability on counties [and cities] under the doctrine of respondeat superior for acts of county [and city] employees; it grants immunity to counties [and cities] only where the public employee would also be immune."  *Robinson v. Solano Cty.*, 278 F.3d 1007, 1016 (9th Cir. 2002) (citing Cal. Gov't Code § 815.2).  "[A] governmental entity can be held vicariously liable when a police officer acting in the course and scope of employment uses excessive force . . . ."  *Mary M. v. City of Los Angeles*, 54 Cal. 3d 202, 215 (1991).  Defendants do not claim that Defendants Nguyen and McGouch were acting outside the scope of their employment. Therefore, Defendant National City would be vicariously liable for any excessive force committed by Defendants Nguyen and McGouch in violation of § 52.1.  *See e.g.*, *Lopez*, 2009 WL 10725739, at *13 ("[B]ecause California law imposes liability on public entities for acts committed by their employees while in the scope of their employment, *see* Cal. Gov't Code § 815.2, the Court denies the Motion for Summary Judgment as to Plaintiff's § 52.1 claims against the Municipal Defendants.").  The Court denies summary judgment as to Defendant National City's vicarious liability for excessive force in violation of Cal.

Civ. Code § 52.1 (claim 3) regarding Defendant Nguyen's and Defendant McGouch's pulling of Plaintiff's arms and hands.

### iii. Violence Because of Race in Violation of Cal. Civ. Code § 51.7 Against Defendants National City, Nguyen, and McGouch (claim 2)

Defendants National City, Nguyen, and McGouch contend that Plaintiff's second claim pursuant to Cal. Civ. Code § 51.7 is precluded because the amount of force used to handcuff and remove Plaintiff from National City Council chambers was reasonable. Defendants National City, Nguyen, and McGouch contend that Plaintiff fails to establish the second element of her § 51.7 claim because Plaintiff fails to establish racial or political bias by Defendants Nguyen or McGouch.

Plaintiff contends that reasonableness of force should be determined by a jury because the inquiry requires sifting through and drawing inferences from disputed factual contentions. Plaintiff contends that there is no dispute of material fact that protesters of different races were treated differently because three female white protesters were carried out of National City Council chambers in a reasonable manner while Plaintiff, a black female protester, was subjected to excessive force.

California Civil Code § 51.7 states, in relevant part,

> All persons within the jurisdiction of this state have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation, or on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51, or position in a labor dispute, or because another person perceives them to have one or more of those characteristics. The identification in this subdivision of particular bases of discrimination is illustrative rather than restrictive.

Cal. Civ. Code § 51.7(b). Characteristics include sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status. *See* Cal. Civ. Code § 51(b), (e). Sections 51.7 and 52.1 were enacted to "provide a civil remedy for hate crimes."

*D.C. v. Harvard-Westlake Sch.*, 176 Cal. App. 4th 836, 844 (2009).  To prevail on a § 51.7 claim, a plaintiff must establish four elements: (1) the defendants threatened or committed violent acts against the plaintiff; (2) the defendants were motivated by their perception of the plaintiff's race; (3) the plaintiff was harmed; and (4) the defendants' conduct was a substantial factor in causing the plaintiff's harm.  *See Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 880-81 (2007).

In this case, the evidence in the record shows that "neither [Defendants] Nguyen nor McGouch treated anyone else differently because neither of them arrested, handcuffed[,] or removed anyone else that day."  (Pl.'s Resp. to Defs.' SSUMF ¶ 39, ECF No. 58-1 at 11).  The video footage captured by Aaron Leaf depicts Defendant McGouch holding and dragging Plaintiff by the upper right arm and/or right armpit.  *See* Ex. E to Paradis Decl. ECF No. 50-5.  The video footage captured by UPAT depicts Defendant Nguyen holding and dragging Plaintiff by the left wrist and left forearm upon reaching the exit door.  *See* Ex. D to Paradis Decl. ECF No. 50-5.  In support of Plaintiff's Response in opposition to Defendants' Motion for Summary Judgment or Partial Summary Judgment (ECF No. 58), Plaintiff filed photos of unidentified police officers removing other protesters from National City Council chambers on July 24, 2018.  *See* Ex. 2 to Gilliland Decl., ECF No. 58-2 at 30; Ex. 3 to Gilliland Decl., ECF No. 58-2 at 32; Ex. 11 to Gilliland Decl., ECF No. 58-2 at 72.  The first photo depicts two unidentified police officers holding and lifting a handcuffed, female, white protestor by the upper arms and/or armpits.  *See* Ex. 2 to Gilliland Decl., ECF No. 58-2 at 30.  The second photo depicts two unidentified police officers hold and lifting a handcuffed, female, white protestor by the upper arms and/or armpits.  *See* Ex. 3 to Gilliland Decl., ECF No. 58-2 at 32.  The third photo depicts two unidentified police officers hold and lifting a handcuffed, female, white protestor by her bent elbows.  *See* Ex. 11 to Gilliland Decl., ECF No. 58-2 at 72.  Plaintiff fails to establish the identity of these police officers and whether any of them were Defendants Nguyen or McGouch.

The evidence in the record shows that the manner in which Defendants Nguyen and McGouch held and dragged Plaintiff was similar to the manner in which the unidentified police officers held and lifted female white protestors.  The evidence in the record shows that "[n]either [Defendants] Nguyen nor McGouch said anything about [Plaintiff]'s race or her politics before, during[,] or after her arrest."  (Pl.'s Resp. to Defs.' SSUMF ¶ 38, ECF No. 58-1 at 10).  Plaintiff has failed to present a genuine issue of material fact as to the claim of violence because of race.  *See e.g.*, *Jaramillo v. City of San Mateo*, 76 F. Supp. 3d 905, 928 (N.D. Cal. 2014) ("Because Jaramillo has not presented evidence . . . that the [defendant] officers were 'motivated by prejudice against [Jaramillo]' because he is Hispanic, . . . the Court GRANTS the [defendant] officers' and the [defendant] City's motion [for summary judgment] as to this claim under § 51.7."); *Warren v. Marcus*, 78 F. Supp. 3d 1228, 1248 (N.D. Cal. 2015) ("[The] [p]laintiff testified that after he was shot, he heard someone use a racial epithet. . . .  [The] [d]efendant [officer] denies being near [p]laintiff after the shooting and denies making the statement.  [The] [p]laintiff provides no authority to support attributing the epithet by an unidentified officer to [d]efendant [officer] for purposes of section 51.7 liability.  [The] [p]laintiff has failed to demonstrate a genuine dispute of fact as to whether [d]efendant [officer] was motivated by racial animus when he shot Plaintiff.  Accordingly, the court grants summary judgment as to [p]laintiff's section 51.7 claim.").  The Court grants summary judgment in favor of Defendants National City, Nguyen, and McGouch and against Plaintiff for violence because of race in violation of Cal. Civ. Code § 51.7 (claim 2).

## IV.   MOTION TO CONSOLIDATE CASES (ECF No. 51)

Plaintiff requests that the Court consolidate this case ("*Williamson I*") with a separate action, *Williamson v. Long et al*, No. 3:20-cv-00743-AJB-AGS (S.D. Cal. filed Apr. 17, 2020) ("*Williamson II*").  In *Williamson II*, Plaintiff initiated the action by filing a Complaint against Defendants Daniel Long and Hadel Awad.  (ECF No. 1).  Plaintiff alleges that she sustained injuries when Defendants Long and Awad (National City police officers) handcuffed her during a National City Council meeting, escorted her from

National City Council chambers, and transported her to the National City police station on June 19, 2018. *See id.* at 2-4. Plaintiff brings one cause of action for excessive force in violation of 42 U.S.C. § 1983 against Defendants Long and Awad. *See id.* at 4-5.

Plaintiff contends that there are common questions of fact because the questions of fact are substantially similar. Plaintiff asserts that Defendant National City's rebuttal expert opined that Plaintiff's rotator cuff could have been torn on June 19, 2018 or July 24, 2018. Plaintiff contends that inconsistent judgments and a miscarriage of justice will occur if a jury is convinced that Plaintiff was injured on June 19, 2018 by Defendants Long and Awad because Plaintiff may not receive compensation for injuries allegedly sustained on July 24, 2018 by Defendants National City, Nguyen, and McGouch. Defendants National City, Nguyen, and McGouch contend that there are no common questions of law or fact. Defendants National City, Nguyen, and McGouch contend that consolidation will cause inconvenience, delay, prejudice, and confusion.

"If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a). "The district court has broad discretion under this rule to consolidate cases pending in the same district." *Inv'rs Research Co. v. U.S. Dist. Court for Cent. Dist. of California*, 877 F.2d 777, 777 (9th Cir. 1989).

The Court finds that there are no common legal or factual issues between *Williamson I* and *II*. *Williamson I* involves numerous remaining causes of action including excessive force in violation of 42 U.S.C. § 1983 (claim 1) regarding Defendant Nguyen's and Defendant McGouch's pulling of Plaintiff's arms and hands; excessive force in violation of Cal. Civ. Code § 52.1 (claim 3) regarding Defendant Nguyen's and Defendant McGouch's pulling of Plaintiff's arms and hands; and Defendant National City's vicarious liability for excessive force in violation of Cal. Civ. Code § 52.1 (claim 3) regarding Defendant Nguyen's and Defendant McGouch's pulling of Plaintiff's arms and hands. On the other hand, in *Williamson II*, Plaintiff brings only one cause of action for excessive

force in violation of 42 U.S.C. § 1983 against Defendants Long and Awad.  *Williamson I* and *II* pertain to different events which occurred over one month apart and involve different defendants.  The Court declines to consolidate *Williamson I* and *II*.

## V.    CONCLUSION

IT IS HEREBY ORDERED that the Motion for Summary Judgment or Partial Summary Judgment filed by Defendants National City, Lucky Nguyen and John McGough (ECF No. 50) is GRANTED IN PART and DENIED IN PART.  Summary judgment is GRANTED as to Plaintiff's first claim for excessive force in violation of 42 U.S.C. § 1983 regarding tight handcuffs, Plaintiff's second claim for violence because of race in violation of Cal. Civ. Code § 51.7, and Plaintiff's third claim for excessive force in violation of Cal. Civ. Code § 52.1 regarding tight handcuffs.  Summary judgment is otherwise DENIED.

IT IS FURTHER ORDERED that the Motion to Consolidate Cases filed by Plaintiff Tasha Williamson (ECF No. 51) is DENIED.

IT IS FURTHER ORDERED that the final pretrial conference is set for Thursday, November 12, 2020 at 9:30 a.m. in Courtroom 14B before the Honorable William Q. Hayes.  The parties shall lodge the proposed pretrial order on or before October 9, 2020.

Dated:  September 3, 2020

Hon. William Q. Hayes
United States District Court